## The Commonwealth *versus* Newcomer.

*Who are agents under Revised Criminal Code, sec.* 114.—*Formal and apparent defects in indictment must be objected to before trial.*—*Proper mode of proceeding where defendant indicted is not within the statute.*

1. Whether, under section 114 of the Revised Penal Code, providing that, " If any person being a banker, broker, attorney, merchant, or *agent*, and being intrusted for safe custody with the property of any other person, shall with intent to defraud, sell, negotiate, transfer, pledge, or in any manner convert, or appropriate to or for his own use or the use of any other person, such property, or any part thereof, he shall be guilty of a misdemeanor;" the word " agent" is limited to one who follows the business of an agent, as a profession or occupation, not decided.

2. But where the defendant was indicted and convicted for converting and appropriating to his own use property intrusted for safe custody to him as agent, it is not a reason for arrest of judgment, that the indictment did not describe the defendant as a "professional agent:" if the defect was formal, apparent upon the face of the indictment, the objection should have been by demurrer or on motion to quash before the jury were sworn: and if the defendant was not an agent under the act, it was the duty of the court, not to arrest the judgment but to have granted a new trial.

ERROR to the Quarter Sessions of *Philadelphia*.

Upton S. Newcomer was convicted in the court below upon an indictment framed under the provisions of the 114th section of the Revised Penal Code (Pamphlet Laws of 1860, p. 410), which is as follows: " If any person being a banker, broker, attorney, merchant, or agent, and being intrusted for safe· custody with the property of any other person, shall, with intent to defraud, sell, negotiate, transfer, pledge, or in any manner convert or appropriate to or for his own use, or the use of any other person, such property, or any part thereof, he shall be guilty of a misdemeanor."

The first count of the indictment averred that the defendant, on the first day of August, in the year of our Lord one thousand

[Commonwealth v. Newcomer.]

eight hundred and sixty-four, at the county aforesaid and within the jurisdiction of this court, being then and there the agent of a certain Charles H. Graham, and being as such agent intrusted for safe custody with the property of him, the said Charles H. Graham, to wit, the sum of seven thousand five hundred dollars; and the said Upton S. Newcomer, being such agent as aforesaid, on the day and year aforesaid, with force and arms, &c., and with intent to defraud the said Charles H. Graham, did then and there convert and appropriate to his own use the said sum of seven thousand five hundred dollars so intrusted to him for safe custody as aforesaid, contrary to the Act of Assembly in such case made and provided, and against the peace and dignity of the Commonwealth of Pennsylvania. The second count charged that, being then and there the agent of a certain Charles H. Graham, and as such agent intrusted to receive for him, the said Charles H. Graham, the sum of seven thousand five hundred dollars, the money arising from the sale of certain property of the said Charles H. Graham and being so intrusted, the said Upton S. Newcomer, did receive the said seven thousand five hundred dollars, and afterwards on the day and year aforesaid and within the jurisdiction aforesaid, with force and arms, &c., did fraudulently embezzle and convert to his own use a large part of the money so received, to wit, the sum of six thousand five hundred dollars, contrary, &c.

The court arrested the judgment, because, in their opinion, the word " agent" in the second section was limited to one who followed the business of an agent, a professional agent, and because the indictment did not so describe the defendant. The section is copied from the second section of the Act of April 15th 1858 (Pamph. 1858, p. 271), entitled " An Act to make better provision for the punishment of frauds committed by bankers, trustees, and other persons intrusted with property.

This writ was then sued out by the counsel for the Commonwealth, who averred here that the indictment charged in sufficient words an offence known to the law, and that the court below erred in arresting the judgment.

*William B. Mann*, District Attorney, with whom were *Henry M. Phillips* and *John P. O'Neill*, for the Commonwealth, argued that the limit prescribed by the court below would lessen the usefulness of the enactment and would not be in conformity with the objects of those who originally passed it, and that it was important that there should be a decision on the subject by this court, especially as this word "agent" has been differently construed by judges in various parts of the state.

But a single reason can be plausibly suggested for such restriction *noscitur a sociis*, its location among words, indicat-

[Commonwealth *v.* Newcomer.]

ing pursuits, regularly followed, and not adapted to each particular case; but a single act of conversion of any one of these constitutes the crime, and *pari ratione*, a single act of embezzlement by an agent—one acting for another—in a fiduciary character, shall be similarly regarded. The word is not novel in our legislation; the insolvent laws have had it since 1836, for the section then passed and re-enacted in the 131st section of the Penal Code of 1860, provides for the punishment of any petitioner who had applied to his own use any money or property with which he had been intrusted as bailee, *agent*, or depositary, &c. So, too, in sections 130 and 134, it is a crime, under certain circumstances, to act as scrivener, broker, *agent*, or witness, and the word so often used in the criminal law, should have an uniform interpretation. Throughout the legislation of the state the word is found; appeals from awards of arbitrators, affidavits for writs of error, and many other things are, by law, allowed to be done by agents *eo nomine;* and it seems a perversion of terms to regard an agency as a permanent business, each employment being separate, and the employed being the party's agent for the particular purpose. There can be no such thing really as a professional agent. The word agent, closely sounding like its primitive *agens*, is one acting for another. In this section it is intended to enumerate the classes of persons subject to prosecution for flagrant breaches of trust. A banker, a broker, a merchant, an attorney (perhaps an attorney in fact as well as attorney at law), receives property by virtue of his calling, but an agent receiving property for safe custody, should certainly not have immunity for dishonesty, worse generally than in him who has mingled the property of another with his own, and has not afterwards the power to separate it. With the latter the crime may be venial; with the former, never so, as the conversion is always intended and for personal gain. Any one may be an agent, an infant, a married woman, or an alien: Bacon's Abridgment, *Authority*, B; Hopkins *v.* Mollineux, 4 Wend. 465. See also 1 Hill (So. Ca.) 270; 14 Ala. 469; Rex *v.* Hughes, 1 Mood. C. C. 370; Rex *v.* Hall, 1 Mood. C. C. 474; Rex *v.* Carr, Russ. & Ryan 198.

The word "agent" was used by this court in the same manner as in the Penal Code, in the case of Wingate *v.* Mechanics' Bank, 10 Barr 108.

The word "agent" is also similarly defined in Bank of Kentucky *v.* Schuylkill Bank, 1 Parsons' Select Equity Cases 214. In Saving Fund *v.* Hagerstown Bank, 12 Casey 503, and in Williams *v.* Zelty, 7 Casey 461, the difference between "*general*" and "*special*" agent is described; but in every case the word agent is recognised as a word of general use, and with a comprehensive meaning.

[Commonwealth *v.* Newcomer.]

The offence is well described; the Penal Code requires but little description, though this point is of less importance than the one first presented.

*John Goforth,* for defendant.—The 114th section of the Penal Code was taken from and is in the words of the 2d section of the Act of 15th April 1858, and not in the words of the title of the Act as given by plaintiff in error. (Rep. of Com. to revise Penal Code, p. 31.)

The authorities cited by plaintiff in error antedate this Act of Assembly, and have neither reference nor analogy to it. In Wingate *v.* Mechanics' Bank, 10 Barr 108, the bank advertised by a placard posted up in their banking-house, that they would make collections on certain terms. It was a part of their regular business, and authorized by their charter.

This section was meant to refer to persons of particular professions, as bankers, brokers, attorneys, merchants, and agents. Real estate agents, pension agents, bounty agents, collection agents, &c., are professions just as distinct and well known in the community as the banker, broker, attorney, or merchant.

All statutes affecting the liberty of the citizen must be strictly construed.

If, in the 131st section, the word "agent" was meant to be used in the sense contended for by the plaintiff in error, why use the words "either as bailee, agent, or depositary" at all? If the meaning is complete without them, why add that which is merely surplusage? But suppose it to be in the Insolvent Act as contended for by plaintiff in error, that law was meant, to reach a simple violated trust. The defendant below was not heard upon a petition in insolvency, and this Code was never in an insolvent court.

All the authorities quoted by plaintiff in error relate to civil jurisprudence. That acting for another in a single instance for hire or favour which would make the fiduciary relation sufficient to bind the principal in a money contract, would not be sufficient to make the one so acting a banker, broker, attorney, or merchant. Why should it make him an agent more than either of the others?

Agent means one whose business it is to act for another, and "business," Webster says, "is a particular occupation, as agriculture, trade, mechanic art, or profession." A single act of money-changing alone will not make a man a banker, a single purchase of stock will not make a man a broker, who, Webster tells us, is "an agent or negotiator." A single act of sale of merchandise will not make a man a merchant. The appearance of a man in court to plead his own cause will not make him a

13 Wr.—31

lawyer.   Why should a single instance of acting for another make a man an agent?

A married woman, an infant, or a slave, may act for others in one or many instances, but the same measure of proof required to convict them of being delinquent bankers, brokers, attorneys, or merchants, would be required to convict them of being delinquent agents under this section of the Penal Code.

If this section was meant to embrace a man who was an agent or representative in a single transaction, there was no use of the words " being a banker, broker, attorney," &c., for it would have covered the case fully if the law had read, " *if any person, being intrusted for safe keeping*," or acting as an agent for another in any capacity whatever, for any one acting for another is an agent.   The words being used are to have their meaning given them, and not to be treated merely as surplusage.

Bankers, brokers, attorneys, and merchants, are all agents in the broad sense contended for by the plaintiff in error.   The fact that certain persons draw confidence to themselves by the capacities in which they act, and then violate that trust, is well known, and it was this violation the legislature meant to punish.

Section 113, immediately preceding this, and relating to trustees, would be useless if the construction contended for by the plaintiff in error be the proper one.

Section 115, immediately following it, would be useless if the mere agency in a single case was meant by the law, whereas it requires a power of attorney (*i. e.* written) to bring a man under its provisions.

Sections 116, 117, and 118 would all be useless, for every officer, director, or manager of a body corporate, or public company, would be an agent.

The opinion of the court was delivered, May 12th 1865, by

READ, J.—The indictment in this case is framed under the 114th section of the "Act to consolidate, revise, and amend the Penal Laws of this Commonwealth," passed the 31st March 1860, which with other sections of the same act is copied from the Act of the 15th April 1858 (P. Laws, p. 270), and which act was itself nearly a transcript of the Act of 20 and 21 Vict. ch. 54, entitled "An act to make better provision for the punishment of frauds committed by trustees, bankers, and other persons intrusted with property," passed 17th August 1857, which was repealed by the Act of 24 and 25 Vict. c. 195, having been supplied by the " Act to consolidate and amend the Statute Law of England and Ireland, relating to larceny and other similar offences," passed 6th August 1861.

Our revisers in the 108th and 123d sections copied nearly *verbatim* the 4th and 11th sections of the Act of Parliament of

[*Commonwealth v. Newcomer.*]

1857, which had been omitted in our Act of 1858, and in the 124th adopted the language of the 17th section of the Act of 1857, instead of that of the 11th section of the Act of 1858. The interpretation clause gives only the statutory meaning of the words "trustee" and "property." This 114th section is found in Title 7, "Offences against Personal Property."

The indictment uses, in conformity to the 11th section of the "Act to consolidate, revise, and amend the laws of this Commonwealth relating to penal proceedings and pleadings," passed the 31st March 1860, the very language of the act describing the crime and the criminal; and it is therefore difficult to see how the question argued here, could be raised upon a writ of error, when we have nothing but the indictment before us. If it was a formal defect apparent on the face, which it is here contended that it was, then the objection should have been taken by demurrer, or on motion to quash the indictment before the jury were sworn. If the court did not think the defendant came within the true meaning of the word agent, then their true course was not to arrest the judgment, but to have granted a new trial, and upon a future trial they could have laid down the law as they understood it. As, therefore, there was no error in the indictment, the court below were in error in arresting the judgment.

> The judgment is reversed, and the record remitted to the court below, to proceed to sentence according to law.