194 COMMONWEALTH *v.* SHIELDS, Appellant (NO. 2).

PER CURIAM, May 13, 1912:

---

## Commonwealth *v.* Shields, Appellant (No. 2).[1]

*Criminal law—Sheriff—Permitting prisoners to escape—Acts of April 14, 1905, P. L. 169, and March 31, 1860, sec. 5, P. L. 382.*

1. The Act of March 31, 1860, sec. 5, P. L. 382, which declares that if any sheriff or keeper of any jail "having any offender convicted or accused of any crime in his lawful custody for such a crime shall voluntarily permit or suffer such offender to escape and go at large," the officer so offending shall be guilty of a misdemeanor, applies to a sheriff who permits persons in his custody to escape who were summarily convicted before a justice of the peace of trespassing on posted land in violation of the Act of April 14, 1905, P. L. 169, and who were fined $5.00, and in default of payment committed to the county jail. The word "crime" in the act of 1860, covers offenses for which justices of the peace may summarily convict.

2. The triviality of the offenses for which such prisoners have been convicted, is not to be taken as the measure of the offense of the officer in permitting them to go at large.

3. The rule of strict construction of a statute in favor of a person accused of offending against it, is not violated by giving the words of the statute a reasonable meaning according to the sense in which they

[1] For dissenting opinion in this case see post, p. 337.

were intended, even though in a different connection a more restricted meaning would be ascribed to them.

4. A crime is an act committed or omitted in violation of a public law either forbidding or commanding it, and in a comprehensive sense it includes minor offenses.

5. Where an indictment charges the sheriff with permitting the escape of a person "convicted of the offense of willful trespass" before a justice of the peace, and committed to the county jail for a period of five days, the word "offense" will be construed to mean the word "crime" inasmuch as the context shows that the word was used in such sense in the indictment.

6. While such an indictment may be defective in not setting out with particularity and detail all of the facts constituting the offense or crime for which the prisoners who were permitted to escape, were committed, objection thereto, on such ground cannot be made for the first time after plea, trial on the merits, verdict and judgment.

7. A sheriff cannot relieve himself from criminal liability for releasing prisoners on the ground that his deputies were the persons responsible for the release, where the evidence shows that the prisoners had been twice released after two convictions, and within a short interval, and declarations of the defendant himself offered in evidence show that he not only knew of the release, but that he had himself "turned them loose."

*Criminal law—Sentence—Minimum and maximum limits—Acts of May 10, 1909, P. L. 495, and June 19, 1911, P. L. 1055.*

8. A sentence passed on September 14, 1911, that the prisoner pay a fine of $1.00 and undergo imprisonment "for a period of one year and one calender month to be computed from this date," disregards the indeterminate sentence Acts of May 10, 1909, P. L. 495, and June 19, 1911, P. L. 1055, and the appellate court will reverse the sentence and remit the record of the court below "with direction that the court proceed and sentence the defendant afresh, in due order and according to law."

Argued Dec. 11, 1911. Appeal No. 101, April T., 1912, by defendant, from judgment of O. and T. and Quarter Sessions, Westmoreland Co., Aug. T., 1911, No. 276, on verdict of guilty in case of Commonwealth v. John E. Shields. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Indictment for malefeasance in office in permitting prisoners to escape. Before McCONNELL, J.

From the record it appeared that the defendant was indicted for permitting the escape of certain persons who had been summarily convicted before a justice of the peace for trespassing upon the posted private property of the Penn. Gas Coal Company in violation of the Act of April 14, 1905, P. L. 169. The record showed that the prisoners had been fined $5.00 each and in default of payment had been committed to the county jail for a period of five days.

Other facts appear by the opinion.

At the trial the defendant presented the following point:

1. There can be no conviction of the defendant upon the first count contained in the indictment, it clearly appearing by the testimony of the commonwealth's witnesses, that the alleged offenders, whom the defendant is charged with having voluntarily permitted or suffered to escape and go at large, were neither convicted nor accused of any crime, the offense of which they were accused and convicted being a mere trespass only. *Answer:* We have read to you the views of a judge of the Superior Court, that this act of assembly made this offense something else than a mere trespass, as it had been prior to the passage of that act. It made it a public offense—an offense to be prosecuted by and in behalf of the commonwealth of Pennsylvania as a crime. So that we cannot say to you that there can be no conviction on this count because the offense of which they were accused and convicted was a mere trespass only. It was more than that; it was a public crime, and the conviction was conviction for a public offense. That point is, therefore, refused. [1]

The court charged in part as follows:

[If it is a criminal case that was conducted before the justice, then there is no dispute in the evidence; there was a conviction, there was a sentence, there was a commitment, and the prisoners were delivered to the custody of the county jail, in the one case to the sheriff personally,

who is the keeper of the county jail, and in another case to the jailer, who is a subordinate officer; and in both cases there is evidence that the sheriff voluntarily released the persons so committed—that is, if you believe the evidence of the constable as to the declaration of the sheriff in regard to that matter. There is not much difficulty in the way of the commonwealth showing an escape, if they can show, in a criminal case, that the defendants committed were committed for a definite time, and that they were at large within that time. There is a presumption of negligence from those facts. There is ample evidence also to show that it was more than simply a negligent act, on the part of the officer. It can be shown by evidence that it was a willful act—an intentional act on the part of the keeper of the jail, and there is evidence of that kind.] [5]

[The defense that is urged in this case is not one of fact, but one of law, it being alleged that the things tried before the justice were not criminal offenses in which the justice had the right to render summary and final judgment, but that the statute under which he proceeded only authorized a suit before him for a penalty.] [6]

[The voluntary permitting and suffering of such prisoners to escape and go at large is the offense described in the first count in this indictment, and is an offense that the evidence in this case sustained.] [7]

[In these cases, the prisoners that were committed by the magistrate in both cases were released before the term of their imprisonment had expired. The defendant was the keeper of the jail. Those prisoners were either voluntarily or negligently released. In either case, their release would constitute a criminal offense. The case for which the defendant is being tried is that of voluntarily releasing them, and the evidence introduced by the commonwealth, if believed, would show that the defendant intentionally released the prisoners. If so, that constitutes the offense described in these first counts of the bills of indictment.] [8]

[There are two other counts in these bills of indictment, and the second counts are substantially the same, and as we explained to you, the nature and character of the offense charged is "unlawfully, culpably, negligently, willfully and contemptuously suffering and permitting the prisoners to go at large, without any discharge or release by due process of law. That, as we understand it, is the offense at the common law. They were not discharged nor released by any due process of law. In the one case, the prisoners were committed to the bailiff in charge of the jail, and they were subsequently released, and that not by any process of law, but by arbitrary and contemptuous action on the part of the keeper of the jail. That would be an offense at the common law, such as is described here. But in the other indictment, the prisoners were given over into the personal care of the sheriff himself, along with the commitment accompanying them.] [9]

Verdict of guilty, upon which the following sentence was passed:

"It is the sentence of the court that you, John E. Shields, here present in open court, at No. 276, August Sessions, 1911, pay a fine of One Dollar to the commonwealth for the use of the county; that you undergo an imprisonment in the Western Penitentiary, situate in the County of Allegheny, by separate or solitary confinement at labor for a period of one year and one calendar month, to be computed from this date; that you be dismissed from your office as Sheriff of Westmoreland County; that you pay the costs of prosecution, and stand committed until this sentence is complied with."

*Errors assigned* among others were (1, 5–9) above instructions, quoting them, and (10) the sentence of the court.

*Chas. C. Crowell,* with him *Robbins & Wyant,* for appellant.—Trespass under the Act of assembly of April 14, 1905, P. L. 169, is not such a crime as is contemplated

by the fifth section of the Act of assembly of March 31, 1860, P. L. 382.

Appeals taken from the judgment of the magistrate in an action brought under the act of 1905 have been taken to the quarter sessions and the common pleas indiscriminately. No apparent reason is given why one jurisdiction was invoked rather than the other: Com. v. Burford, 225 Pa. 93; Com. v. Shapiro, 41 Pa. Superior Ct. 96.

The prisoners released were not guilty of a crime: Com. v. Rogers, 16 S. & R. 243; McMichael v. McKeon, 10 Pa. 143; Com. v. Medland, 5 Pa. C. C. R. 233; Meyers v. Com., 83 Pa. 131; McCord v. Whitacre, 8 Pa. Superior Ct. 277.

The sentence pronounced by the court is in violation of sec. 6 of the Act of assembly of May 10, 1909, P. L. 495.

*Nevin A. Cort*, assistant district attorney, with him *W. T. Dom, Jr., D. C. Ogden* and *R. D. Hurst*, for appellee.—Not a single case under the act of 1905 which has reached the Superior Court went there on an appeal to the common pleas, except Com. v. Shapiro, 41 Pa. Superior Ct. 96; Com. v. Foster, 36 Pa. Superior Ct. 433, the appeal was to the quarter sessions court; Com. v. Layton, 45 Pa. Superior Ct. 582, the appeal was to the quarter sessions, and in Com. v. Price, 45 Pa. Superior Ct. 643, the appeal was to the quarter sessions court.

The sentence was proper: Com. v. Cameron, 42 Pa. Superior Ct. 347.

OPINION BY RICE, P. J., March 1, 1912:

The count of the indictment involved in this appeal was evidently intended to be drawn under sec. 5 of the Act of March 31, 1860, P. L. 382, which declares, inter alia, that if any sheriff or keeper of any jail, "having any offender convicted or accused of any crime in his lawful custody for such crime, shall voluntarily permit or suffer

such offender to escape and go at large," the officer so offending shall be guilty of a misdemeanor.

1. The principal question for decision is, whether the offenders who, it is alleged, were committed to the custody of the defendant as keeper of the jail and were permitted by him to escape and go at large, were committed for a crime within the meaning of the foregoing section. It appears that these persons were arrested and, after hearing before a justice of the peace, were convicted of violation of the provisions of the Act of April 14, 1905, P. L. 169, were each adjudged to pay a fine of $5.00, and, in default of payment, were committed to the county jail for five days, as the act directs. The proceeding was in the name of the commonwealth and, as directed by the statute, the fines were made payable to the school fund of the district in which the trespass was committed. It was not a civil proceeding for the redress of the injury the landowner had sustained, but a proceeding for the punishment of an act which the legislature in its wisdom had made an offense. The nature of the prohibited act was thus clearly stated by Judge PORTER, in Com. v. Burford, 38 Pa. Superior Ct. 201, s. c., 225 Pa. 93: "The effect of the statute was to declare to be a public wrong and subject to a penalty a thing which had until that time been a private wrong for which the party injured had a remedy by private action." It is not for the courts, much less is it for jailers having in custody convicted offenders against this statute, to minimize its provisions upon any theory of the unwisdom of the legislature in making this a penal offense; nor can the power of the legislature to do this and to subject the offender to summary conviction be questioned. "There is nothing to forbid the legislature from creating a new offense and prescribing what mode they please of ascertaining the guilt of those who are charged with it. . . . Summary convictions were well known before the formation of the constitution, and they are not expressly or impliedly prohibited by that instrument except in so far as they are not to be substituted for a jury,

where the latter mode of trial had been previously established." BLACK, C. J., in Van Swartow v. Com., 24 Pa. 131; Byers v. Com., 42 Pa. 89. It is thus seen that the question for decision is one of general importance, for if sec. 5 of the act of 1860 does not apply to a person convicted of the offense defined by, and punishable under, the act of 1905, it does not apply to any offender against any of the numerous penal statutes of the commonwealth who may be summarily convicted and duly committed to the custody of the jailer. If this be the true construction of the section, it is because the word "crime" never can be applied appropriately to such offenses, not because an intention of the legislature to confine the section to the voluntarily permitting prisoners charged with indictable offenses to escape is discoverable from the context. The commissioners who framed the penal code say that this section, with secs. 3, 4, 6, 7 and 8, was intended "to provide against a series of offenses which either defeat or seriously impede the administration of criminal justice," and it needs no extended argument to show that for a jailer voluntarily to permit to escape and go at large offenders against the penal laws of the commonwealth, who have been summarily convicted and duly committed to his custody, is within the mischief thus described by the commissioners. The triviality of the offenses for which such prisoners have been convicted is not to be taken as the measure of the offense of the officer in permitting them to go at large. It must be borne in mind, however, that, though a case be fully within the mischief to be remedied and be even of the same class and within the same reason as other cases enumerated, still, if it be not within the words, construction will not be permitted to bring it within the statute: Bish. Stat. Cr., sec. 220. But it is also to be remarked that in a statute the meaning of the words may be this or that, according to the subject, context and other particular circumstances; the province of the courts is to determine the meaning the legislature intended them to have. The rule of strict construction in favor of the ac-

cused is not violated by giving the words a reasonable meaning according to the sense in which they were intended, even though in a different connection a more restricted meaning would be ascribed to them: Com. v. Gouger, 21 Pa. Superior Ct. 217, 229. "Strict construction is not the same thing as construing everything to defeat the action; that is not what is meant by the expression." THOMPSON, J., in Bartolett v. Achey, 38 Pa. 273. In the application of these principles the word "crime," as used in some connections, has been construed properly as synonymous with "misdemeanor"; in others, as implying an offense of a deeper and more atrocious dye; in still others, as including every indictable offense, whether felony or misdemeanor, but not the lesser offenses of which inferior magistrates have exclusive jurisdiction. But in other connections it may properly be construed in its broadest and most comprehensive sense, and thus as including such lesser offenses. A crime is an act committed or omitted in violation of a public law either forbidding or commanding it: 4 Blackstone's Com. 5. In later text-books, dictionaries, and decisions it has been defined as "an act that subjects the doer to legal punishment:" Standard Dic.; as "the commission or omission of an act which the law forbids or commands on the ground of public policy, and under pain of a punishment to be imposed by the state in its own name:" Clark's Crim. Law, 1; as "a wrong which the government notices as injurious to the public and punishes in what is called a criminal proceeding in its own name:" 1 Bish. Crim. Law, sec. 32; 1 Bouv. Law Dic. (Rawle's ed.), 477; as "an act or omission which is prohibited by law as injurious to the public and punished by the state in a proceeding in its own name or in the name of the people or the sovereign:" 12 Cyc. of Law & Pro. 129; as an act of commission or omission punishable as an offense against the state: 1 McClain's Crim. Law, sec. 4; Campbell v. Supreme Conclave, etc., 66 N. J. Law, 274; 54 L. R. A. 576. In a case where the charge under consideration was the violation of a

city ordinance, the court said: "So the words 'offense' and 'crime' are synonymous when applied to convictions for violations of statutes of a public nature. . . . The words are used interchangeably in our compilations. Whenever a person does an act which is prohibited by law, which act is punishable by fine, penalty, forfeiture or imprisonment, he commits a crime:" People v. Hanrahan, 75 Mich. 611; 4 L. R. A. 751. In another case it was held that, under an act which provided that no person should be appointed a member of the police force in New York city "who shall have been convicted of any crime," a conviction before a police court for public intoxication is sufficient to deprive the person convicted of the right to appointment. "Public intoxication," said EARL, J., "is declared to be an offense, and in the statutes ordinarily the words offense and crime are synonymous:" People ex rel. Kopp v. French, 102 N. Y. 583. There are well-considered cases in our own state in which the words "crime," "offense," and "criminal offense" have been deemed comprehensive enough in meaning to include the class of prohibited acts under consideration. In Van Swartow v. Com., 24 Pa. 131, it was said that the case was not a suit at common law, "but a criminal proceeding under a special statute." In Com. v. Wolf, 3 S. & R. 48, it was said that the Act of April 22, 1794, 3 Sm. L. 177, "considers a breach of the sabbath as a crime injurious to society; terms the complaint to the magistrate an accusation; and calls the establishment of the truth of the offense charged, a conviction." In Com. v. Borden, 61 Pa. 272, it was held that the acts prohibited by secs. 6, 7 and 8 of the Act of April 9, 1760, 1 Sm. L. 227, and punishable, upon conviction before a justice of the peace, by a pecuniary penalty, are "criminal offenses," notwithstanding a moiety of the penalty is given to the informer. So also, in Com. v. Betts, 76 Pa. 465, it was held that an action in the name of the commonwealth, to recover the penalty prescribed for violation of the provisions of sec. 67 of the road law of June 13, 1836, P. L. 551, is not a civil action such as is meant in secs. 22 and 24 of the

Act of March 20, 1810, 5 Sm. L. 161. "It may be so in form, but in its true nature and effect, it is a proceeding for a criminal offense, the supervision of which the essential interests of the public require to belong to this court." See, also, Com. v. Antone, 22 Pa. Superior Ct. 412; Com. v. Hudock, 37 Pa. Superior Ct. 176; Com. v. Butler (No. 1), 39 Pa. Superior Ct. 125. In Burton v. Erie County, 206 Pa. 570, it was held that the sheriff of Erie county was bound to receive and board prisoners committed to the county jail by the mayor and aldermen of the city of Erie for violation of city ordinances, and the county was bound to pay the sheriff for the board of prisoners so committed. Speaking of the Act of February 24, 1770, 1 Sm. L. 309, and the duty of the sheriff with regard to such offenders, Justice DEAN said: "His conduct is not voluntary; he is bound to receive and board them; while the act uses the words, 'committed for any criminal offense whatsoever,' it is manifest these words were used to designate prisoners committed for any offense punishable by fine and imprisonment to distinguish them from persons imprisoned on capias for debt." It involves no wider latitude of construction and no undue expansion of the word "crime" beyond its recognized meaning to hold, as we do, that, as used in sec. 5 of the act of 1860, it includes not only indictable offenses, offenses at common law which are malum in se, or of a deep and atrocious dye, and offenses to which the appellation "crime" is specifically attached by statute, but also new offenses created by statute to which a penalty by fine or by fine and alternative imprisonment is attached and for which the offender may be summarily convicted before a justice of the peace in a proceeding in the name of the commonwealth.

2. The indictment charged that the defendant was the sheriff of the county and that, "being then and there the keeper of the county jail, having in his lawful custody" certain persons, naming them, "convicted of the offense of willful trespass before H. L. Meerhoff, a justice of the peace of Westmoreland county, who, on the 23d day of May,

1911, had committed them to the county jail for a period of five days, did then and there intentionally, unlawfully, voluntarily and contemptuously permit and suffer said offenders to escape and go at large without authority of law, the said magistrate having jurisdiction of the offense complained of, and the commitment being a lawful commitment." While the indictment, in describing the cause of the commitment, does not use the word "crime," it does charge that the persons who were permitted to escape were duly "convicted" of an "offense," a word which both in the crimes act and in the criminal procedure act is used interchangeably with the word "crime," and is commonly used to designate petty crimes punished summarily. The context shows, with reasonable certainty, that it was used in the latter sense in this indictment. Therefore, though the word "offense," instead of the word "crime," was used, the indictment conforms "substantially," though not literally, to the language of sec. 5 of the act of 1860 above quoted.

3. It may be said that the indictment is defective in not setting forth with particularity and detail all of the facts constituting the offense, or crime, for which the prisoners were committed. No such objection was raised by motion to quash, or demurrer, or by request for bill of particulars; nor is it urged here in the printed argument of appellant's counsel. "In some states it is held necessary to set out the crime for which the prisoner was confined, and the order of court under which he was confined; but a general allegation of the charge under which he was confined is sufficient; and indeed there is good authority to the effect that it is not necessary to charge the facts as to the nature of the crime, nor that the indictment was valid:" 2 McClain's Crim. Law, sec. 934. It is not necessary to go, nor are we prepared to go, as far as some of the cases cited by the learned author seem to; it is sufficient, for present purposes, to hold, as we do, that the objection that the indictment does not set forth with greater particularity and detail all of the facts constituting the offense, or crime, for

which the prisoners were committed, is not one which can be held in reserve and be brought forward, for the first time, after plea, trial on the merits, verdict and judgment. See sec. 11, Act of March 31, 1860, P. L. 427; Phillips v. Com., 44 Pa. 197; Com. v. Newcomer, 49 Pa. 478; Com. v. Frey, 50 Pa. 245; Campbell v. Com., 59 Pa. 266; Com. v. Jessup, 63 Pa. 34; Davis v. Com., 3 Sadler, 474; Gorman v. Com., 124 Pa. 536, 539, 543; Com. v. Williams, 149 Pa. 54; Com. v. Barge, 11 Pa. Superior Ct. 164.

4. There were two indictments against the defendant, which were tried together with his consent. One of these (No. 276) contained, in the first count, the charge already quoted; and, in the second count, the charge that the defendant refused to receive the prisoners named into his custody. The other indictment (No. 275) was the same, except that it related to a subsequent commitment of the same persons for a subsequent violation of the same statute. The jury acquitted the defendant on indictment 275, and on the second count of indictment 276, and rendered a verdict of guilty on the first count of the latter indictment. At the outset of his charge, the trial judge called the jury's attention to the fact that they were trying two indictments, each containing two counts, and described the offenses charged in each, with considerable particularity. In the same connection he explained to the jury the purpose of putting more than one count in an indictment, and gave them to understand that some of the counts might be supported by the evidence, and others might not. The verdict leaves no room for surmise that the jury did not understand their functions. The fact that the verdict of not guilty on indictment No. 275 seems inconsistent with the verdict of guilty on the first count of indictment No. 276, does not warrant the inference that they did not understand it to be their duty to decide each case upon the legal evidence pertaining to it.

5. Complaint is made that the court did not instruct the jury that the defendant could not be held criminally liable for the acts of his deputies, unless he consented to and ap-

proved those acts or was negligent in his selection and appointment of deputies. It is true the learned judge did not charge the jury in those words or dwell particularly on the subject of the sheriff's responsibility for the acts of his deputies; nor was he asked to do so. He did, however, give the jury clear instruction as to the nature of the offense charged, and, contrasting it with the offense of negligent escape, instructed them that the willfulness of the act, voluntary escape, constitutes the criminal offense. Further on in his charge he told the jury that the offense for which the defendant was being tried was that of voluntarily releasing the prisoners before their terms of imprisonment had expired; "and the evidence introduced by the commonwealth, if believed, would show that the defendant intentionally released the prisoners. If so, that constitutes the offense described in the first counts of the bills of indictment." The evidence was uncontradicted that on May 23 the prisoners were committed for five days, and were seen at large on the following day; and that on May 29 they were committed for a second offense for ten days, and within a short time, certainly within five days, were again at large; without, in either instance, having been lawfully released. There was no attempt to explain these undisputed facts, and there was nothing in the testimony which tended to shift the responsibility to the defendant's deputies. Moreover, the testimony is that, when the constable arrested the defendant on the charges embraced in the first counts of the two indictments, the following colloquy took place between him and the constable. We quote from the latter's testimony: "I read the warrants to the sheriff and he got wrathy. He says, 'What am I arrested for?' I says, 'As far as I understand, for allowing prisoners to escape.' He says, 'I left those prisoners leave, I turned them loose; I didn't allow them to escape, I turned them loose.'" In view of this uncontradicted testimony, the criticisms of the charge of the court are not well founded. The court did not withdraw from the jury the determination of the facts, but, in sub-

stance and effect, instructed them that the facts testified to constituted the offense charged in the first counts of the indictments. Stating the law in this concrete form was not an invasion of the province of the jury, but tended rather to bring to their minds, in a way they would understand, the issue they had to determine. The defendant in a criminal case has no just cause to complain that the law applicable to his case is so clearly and positively stated that it cannot be misunderstood by the jury. "For the. province of the judge is not merely to counsel, but to instruct, and it is the duty of the jury to take his instruction as the best evidence of the law. This was conceded in Kane v. Com., 89 Pa. 522. It was more emphatically declared in Com. v. McManus, 143 Pa. 64, and Com. v. Goldberg, 4 Pa. Superior Ct. 142. And the general doctrine has been practically recognized and applied in many other cases:" Com. v. Ellis, 46 Pa. Superior Ct. 72. After a careful consideration of the entire charge, we conclude, without further discussion, that it contains no error of which the defendant can justly complain. Viewed in the light of the undisputed evidence, it was a correct, impartial, and adequate presentation of the law applicable to the case.

6. The only remaining assignment of error that we deem it necessary to discuss relates to the sentence. This was in exact conformity to sec. 5 of the act of 1860. But by sec. 6 of the Act of May 10, 1909, P. L. 495, it was provided that whenever any person convicted of any crime should be sentenced to imprisonment in a penitentiary "the court, instead of pronouncing upon such convict a definite or fixed term of imprisonment, shall pronounce upon such convict a sentence of imprisonment for an indefinite term; stating in such sentence the minimum and maximum limits thereof, fixing as the minimum time of such imprisonment, the term now or hereafter prescribed as the minimum imprisonment for the punishment of such offense; but if there be no minimum time so prescribed the court shall determine the same, but it shall not exceed one-

fourth of the maximum time, and the maximum limit shall be the maximum time now or hereafter prescribed as a penalty for such offense." By this statute the court was given no discretion as to the maximum, and its discretion as to the minimum was so far restricted as to make it unlawful to fix it beyond one-fourth of the statutory maximum. The provision of sec. 6 of the Act of June 19, 1911, P. L. 1055, is substantially the same, except that it gives the court discretion as to the minimum and also as to the maximum, provided the latter does not exceed the statutory maximum. It may be urged that the term of imprisonment to which the defendant was sentenced in the present case was intended by the court to be both the maximum and the minimum. But this is not clear; the sentence is certainly not, in form, for an indefinite term, but for a definite and fixed term, and, therefore, is not in accordance with the mandatory provision of the act. It may be urged, also, that the defendant would be entitled to an unqualified discharge at the end of the term fixed by the court, and, therefore, the sentence is more favorable to him than it would have been if an indeterminate sentence, with the same term as a minimum and a longer term as a maximum, had been imposed. The answer to this suggestion is, that it is not legally certain that the court would have fixed this as a minimum, if it had imposed the indeterminate sentence which the statute contemplates. In regard to sentences which are lighter than the minimum punishment provided by a statute, it has been held in some jurisdictions that, where the punishment imposed is not of a different kind from that which the statute prescribes, the accused cannot claim to have been prejudiced thereby: 12 Cyc. of Law & Pro. 783. This has not been universally held; but, assuming it to be the correct view, it can only be maintained where it is clear, to a demonstration, that the sentence imposed is lighter than the punishment contemplated by the statute, and this has not been demonstrated in the present case. Whatever benefits would accrue to the accused from an observ-

ance of the letter and spirit of the indeterminate sentence law, he was entitled to have, and, as it is not legally certain that he has all such benefits, he has standing to complain that the sentence is erroneous. The idea is well illustrated by the case of Beale v. Com., 25 Pa. 11, where it was held that the omission of the words, "separate or solitary confinement at labor," from a sentence of imprisonment for rape, was an error which required reversal upon writ of error sued out by the defendant. In the same connection, Lewis, C. J., said: "The common law embodies in itself sufficient reason and common sense to reject the monstrous doctrine, that a prisoner whose guilt is established by a regular verdict is to escape punishment altogether, because the court committed an error in passing the sentence." In that case the sentence was reversed and the record remitted in order that the court might substitute for "imprisonment at hard labor," "separate or solitary confinement at labor" as the law required. The same course was pursued in Com. v. Barge, 11 Pa. Superior Ct. 164; Com. v. Lewis, 29 Pa. Superior Ct. 282; and Com. v. Cameron, 42 Pa. Superior Ct. 347; s. c., 229 Pa. 592, and has the express sanction of sec. 8 of the Act of June 24, 1895, P. L. 212.

All of the assignments of error, excepting the tenth, are overruled. The tenth assignment is sustained, the sentence is reversed, and the record is remitted to the court of quarter sessions of Westmoreland county, with direction that the court proceed and sentence the defendant afresh, in due order and according to law; and it is ordered that the defendant forthwith appear in that court for the purpose of sentence as aforesaid.