## Commonwealth v. Kimmel et al.

*John G. Love*, District Attorney, for Commonwealth.

*N. B. Spangler* and *Ivan Walker*, for defendants.

FLEMING, P. J., Jan. 15, 1930.—The matters before the court are motions by the defendants in arrest of judgment and for a new trial, the defendants having been found guilty of the larceny of an antlerless deer, alleged to have been the property of John E. Bubb.

At the trial, counsel for defendants moved to quash the indictment, assigning numerous reasons therefor, which we shall discuss in this opinion. For the purposes of the motion to quash, the Commonwealth admitted that the subject of the alleged larceny, as set forth in the indictment, to wit, one female (doe) deer, belonged to the class of *feræ naturæ* or wild animals and also that such indictment was drawn under section 103 of the Act of March 31, 1860, P. L. 382, 408.

The facts, briefly stated, are that the defendants, all of whom are residents of Schuylkill County, were in this county during the so-called "doe deer season of 1928." All defendants had procured from the county treasurer of this county alleged licenses to kill one antlerless deer not less than fifty pounds in weight between Dec. 1, 1928, and Dec. 15, 1928. John E. Bubb, who is a resident of this county, was also the holder of a similar alleged license. On Dec. 3, 1928, Mr. Bubb, hunting alone, had killed a doe deer and had brought it to an empty cabin for safe keeping until he was ready to return home. Later in the day, upon returning for his deer, he found it missing, and after investigation, caused the arrest of the defendants, who it appeared had returned to their home in Schuylkill County on the same day, taking with them several deer, which they contended, at the trial, had been killed by them.

In considering the motion in arrest of judgment, we are limited to a review of the indictment and record of the trial, no sentence having at this time been imposed: Com. *v.* Gurley, 45 Pa. 392. Evidence given during the trial does not become part of the record, and in passing upon the motion the court can-

not consider it: Com. *v.* Gurley, 45 Pa. 392; Com. *v.* Newcomer, 49 Pa. 478; Com. *v.* Kammerdiner, 165 Pa. 222; Com. *v.* Bateman, 92 Pa. Superior Ct. 53 (56). It is proper, however, that we should consider the defendants' exceptions to the indictment: Delaware Division Canal Co. et al. *v.* Com., 60 Pa. 367.

The first three exceptions to the indictment are not sound. Defendants except (1) because the act of assembly under which the indictment is drawn in the above stated case does not make the stealing of a wild deer the subject of larceny; (2) because there is no statute in Pennsylvania making a wild deer the subject of larceny; and (3) because neither under the common law, nor under any statute in Pennsylvania, is a wild deer made the subject of larceny. We might differentiate between the words "wild deer" and the "carcass of a wild deer" which has been killed and reduced to possession by one hunting within the Commonwealth under a valid license, but such is not necessary to show the error in defendants' first three exceptions to the indictment. As long ago as 1799 it was held that the carcass of a wild deer was the subject of larceny. In Pennsylvania *v.* Henry Becomb, John Reading, James Eckles and Samuel Dickson, Addison's Reports, 386, we find the defendants to have stolen deerskins, bearskins, deer tallow, bear and deer meat, etc., from the Indians, and the court said in part:

"Whether the Indians were trespassers or not, the authorities cited prove that they were not thieves. Their labor in killing the deer and bears, *feræ naturæ*, gave the Indians a property in the skins, meat, and tallow of those animals. It would be strange, if the taking could not be felony because it was in the day time, and the offenders impudently avowed it among themselves. The property was as much in the possession of these Indians, as articles of this nature usually are. And if you think the prisoners took and carried them away with an intent of converting them to their own use, without the knowledge of the owners, there is no occasion for you finding a special verdict; you may find the prisoners guilty."

Counsel for the defendants point to Act No. 561 of the Legislature of 1929, approved May 14, 1929 (P. L. 1720), wherein section 1117 is added to the Game Code of 1923, and whereby any animal or bird, or the carcass or body or parts thereof of any animal or bird, killed or caught by any persons under the provisions of the Code, is declared to be personal property and the subject of larceny, as proof of the fact that the Legislature did not intend such to be the rule prior to such enactment. In this particular instance we have first-hand knowledge of the legislative intent moving the enactment of the Act of 1929, *supra*. The defendants having raised the above objections at the trial in February, 1929, we determined it to be expedient, living in a county wherein, were such not to be the firm and established rule, great confusion and disorder might prevail during the hunting season, entailing loss of property and possibly loss of life, and we personally interested members of the Legislature to reaffirm by statutory enactment, that which had long since, both by decision and necessity, been the rule in such cases.

In defendants' objections 4 and 5, however, we find substantial merit. We recognize the able and complete opinion of Judge Shull in Cope *v.* Merwine, County Treasurer, et al., 11 D. & C. 767, and fully concur therein. We quote therefrom as follows:

"Section 511 [referring to the Game Code] was intended to apply to deer without visible antlers, which is the subject of this controversy, and is the only section of this act it is necessary for us to consider. Section 511 does not confer upon this commission autocratic, arbitrary power and authority to

declare an open season on deer without visible antlers. Under that section, they have power to do so only on *information,* not rumors or gossip, but information that would satisfy an ordinarily reasonable person of the necessity for such action through the existence of some particular reason for reducing their number; and, further, even when such reason exists, then must this Game Commission comply with the requirements of the statute in authorizing the killing of such deer. This statute is, of course, in derogation of the common law and must be strictly complied with if it is to place in operation the things contemplated in it. Section 511 provides that deer without visible antlers may be killed during 'a special season of such length as the board may deem advisable either *prior to* or following the regular open season for male deer.' The regular open season for killing male deer is a well recognized period. The meaning of that, to the mind of the court, is so clear that it is hardly subject to argument. It means, and can mean only, that period of the year during which, by the existing statutes of this Commonwealth, the season of killing of male deer is open. This would not, in the opinion of this court, be affected one iota by the fact that the Game Commission may, under certain conditions, temporarily close such season. It would still remain the regular open season in the statute. This particular period of the year was withheld by the Legislature from the authority of the Game Commission, but in this instance the period designated by the Game Commission for a special season on deer without visible antlers is the very period covered by the statute as the regular open season, and this, under the law, the Board of Game Commissioners may not do. As we have said, when the Legislature delegates authority to a commission or board, the right to exercise that authority depends upon a strict compliance with the conditions under which such authority is delegated, and the presumption relative to delegated authority is always against any grant of power other than that which is clearly expressed and shown by the act of assembly which makes such delegation of power and authority; and as we have said, such statutes must be strictly complied with and must be strictly construed.

"Has the Game Commission complied with the conditions which would legalize under the licenses which are about to be issued by the County Treasurer of the County of Monroe the killing of deer without visible antlers? They have chosen a season which the Legislature has specifically withheld from them, and, again, the statute under which they are acting provides that one desiring a special license 'shall also apply to and obtain from the board at Harrisburg a special deer license.' From the facts in this bill, we must conclude that no such application was made by any one of the persons to whom the Board of Game Commissioners are now proposing to have the County Treasurer of Monroe County issue what purport to be special licenses.

"Under the act of assembly, the county treasurer has absolutely no authority to issue special licenses. He is not by the act of assembly made an arm of the Game Commission in this instance as he is made an arm relative to the issuing of regular hunting licenses. It is contended on behalf of the Game Commission that the county treasurer is acting as its agent, but the county treasurer, like the Game Commission itself, is a mere statutory creature and has only such authority as is specifically designated to him by act of assembly, and we are not conversant with any act of assembly which would permit a county treasurer as an official to act as agent for any one or anything; and as the licenses the Game Commission proposes to issue are licenses which on their face show they are issued by the county treasurer, they are not such

164

licenses as could be issued under the authority of the act of legislature governing the Game Commission. . . ."

With the sound reasoning of the learned Judge of Monroe County we most fully agree. The season during which the antlerless deer was killed, in the instant case, was the season specifically withheld from the discretion of the Game Commission for the permitting of killing such deer. The licenses issued to the defendants and to Mr. Bubb were wholly without authority and invalid. Of this fact we have taken judicial notice: 16 Corpus Juris, 525. The whole happening is deeply tainted with illegality and should not become the basis of any conviction. While, beyond question, Mr. Bubb was acting in absolute good faith in killing the deer which was taken from him, his killing thereof, under the invalid license, and in the period specifically excepted by the Legislature in bestowing discretion upon the Game Commission, was an illegal killing. By the very terms of the Game Code itself it is unlawful even to have possession of a deer during the closed season. It would be beyond the pale of any sound reasoning to hold that a property right, sufficient to support a conviction of larceny, could be acquired under an invalid license authorizing the killing of an antlerless deer, within a period specifically excepted by statute.

And now, Jan. 15, 1930, the motion of the defendants in arrest of judgment is allowed for reasons noted above, and the defendants, Harry Kimmel, William Minnick and Harold Wagner are discharged. Costs to be paid by the County of Centre.                          From S. D. Gettig, Bellefonte, Pa.