393 A.2d 833

**COMMONWEALTH of Pennsylvania**

v.

**William A. WRIGHT, Appellant.**

Superior Court of Pennsylvania.

Submitted March 13, 1978.
Decided Oct. 20, 1978.

294

Arthur K. Dils, Harrisburg, for appellant.

Marion E. MacIntyre, Second Assistant District Attorney, and LeRoy S. Zimmerman, District Attorney, Harrisburg, for Commonwealth, appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

PER CURIAM:

Appellant contends that the lower court erred in permitting the Commonwealth to present, in its case-in-chief, evidence of appellant's alleged involvement in other crimes. We agree and, therefore, vacate the judgment of sentence and remand for a new trial.

On August 11, 1976, Steelton police arrested appellant and charged him with conspiracy,[1] burglary,[2] and theft by receiving stolen property.[3] All charges arose out of the same transaction. On January 18, 1977, a jury trial commenced in the Dauphin County Court of Common Pleas. The Commonwealth presented the following testimony: Lether Monts, the victim, testified that at about 9:30 p. m., on August 5, 1976, he went to bed in an upstairs bedroom in his home. When he awoke in the morning he discovered that the ground level of his house was in disarray and several of his possessions were missing. The stolen items included: a portable television, binoculars, a wallet, a lawnmower, and several articles of clothing. Erick King, 17 years old at the time of trial, testified about his role in the burglary of Mr. Monts' home. King, who lives about four houses away from Monts, stated that at about 10 or 11 p. m., on August 5, 1976, appellant and another individual named Bo[4] came to his house and solicited his participation in a house burglary. King was acquainted with appellant through a neighborhood basketball clinic which appellant organized. King and Bo quickly detailed a plan while appellant relocated his car, a maroon Buick Electra, to an inconspicuous position. Appellant waited in his car while King and Bo broke into Monts' home and stole several items. After the burglary, the three divided the goods and then separated. Steelton police ar-

---

1. The Crimes Code, Act of December 6, 1972, P.L. 1482, No. 334, § 1, eff. June 6, 1973; 18 Pa.C.S. § 903.

2. The Crimes Code, *supra*; 18 Pa.C.S. § 3502.

3. The Crimes Code, *supra*; 18Pa.C.S. § 3925.

4. King never further identified Bo and no one knows his current whereabouts.

rested King on August 6, 1976, for the perpetration of this burglary. On cross-examination, King stated that on August 8, 1976, in response to a telephone call from appellant, he went to appellant's home where, in the presence of appellant and his wife, King wrote and signed a statement [5] completely exculpating appellant from any participation in the burglary. On redirect examination, King explained that he copied the statement from a paper prepared by appellant and that he did so upon appellant's suggestion that to do so would "clear" both of them.

Officer Deardorff of the Steelton Police arrested King. Because King implicated appellant in the burglary, police obtained and executed a search warrant for appellant's home. Appellant cooperated with the police and showed them a cardboard box containing a portable television and a tape player. The police seized those two items as well as two other televisions and several other articles. Over appellant's continuing objection, the Commonwealth presented two other witnesses who each identified one of the two other televisions as his own and stated that it had been stolen several months earlier.

In defense, appellant took the stand and testified that he has worked for Bethlehem Steel Corporation as an insurance investigator for ten years. He met Erick King when appellant organized a summer basketball program for youths in Steelton. King was a member of appellant's 1976 summer team but because of some problems, appellant told King that he could no longer participate in the youth program.

Appellant categorically denied any participation in the burglary. He explained that while preparing to go to work on the morning of August 6, 1976, he saw a tall cardboard box blocking his driveway. Because he was expecting a ride to work and because of the heavy rain that morning he brought the box into his garage. His wife, intending to put trash into the box, transported it into the kitchen. Appellant testified that on July 31, 1976, he took his car to a garage to be repaired; he picked the car up again on August

---

**5.** Defense counsel introduced the statement into evidence.

6, 1976. During that time, he rode to work with friends. With respect to King's exculpatory statement, appellant stated that King volunteered to make the statement and King did not know how the police had any information linking appellant to the burglary. Appellant explained the possession of the other two televisions as follows: For one he traded an old set of speakers so as to have a television for his children; the other which was inoperative, he found in the trash.

The owner of the garage testified that appellant's car was in his garage with a broken fuel pump from July 31, 1976, until August 6, 1976. A friend of appellant corroborated these facts. Two co-workers testified that they drove appellant to and from work for that week. Appellant presented two character witnesses who attested to his excellent reputation in the community. The corroborating testimony of appellant's wife completed the defense.[6]

In rebuttal, Erick King took the stand. He stated that in May, 1976, he and another juvenile burglarized a home and stole several items including one of the other televisions found in appellant's home. King said that the other juvenile took that stolen television to appellant's home.

The jury returned guilty verdicts on the burglary and conspiracy charges. Following the denial of post-verdict motions, the court sentenced appellant to concurrent 6 to 23 month terms of imprisonment on each charge. The court also imposed a $500 fine on the burglary conviction and ordered appellant to pay the costs of prosecution on both. This appeal followed.

Appellant contends that the lower court erred in permitting the Commonwealth to introduce evidence of the two unrelated stolen televisions found in his home because this

6. Officer Moore of the Steelton Police also testified in defense by recounting an incident that occurred in late August or early September, 1976. At about 1 a. m. King informed his uncle and mother that he had shot appellant. Police went to the alleged scene of the shooting where they encountered King. He informed police that he had shot appellant and tossed the gun away. Police later learned that no shooting had occurred.

testimony improperly and prejudicially introduced "other crimes" evidence. In *Commonwealth v. Bradley*, 243 Pa.Super. 208, 212, 364 A.2d 944 (1976), our Court recently adopted a two step approach in the analysis of the admissibility of other crimes.[7] First, we reiterated the established rule against introduction of evidence of other crimes allegedly committed by a defendant:

" 'One of our most fundamental and prized principles in the administration of criminal law is that a distinct crime, except under certain special circumstances, cannot be given in evidence against a defendant who is being tried for another crime. This is because the fact that a person has committed one offense is not proof that he has committed another and because the effect of such testimony upon a jury is nevertheless bound to create prejudice and an emotional reaction on their part against the defendant'. *Commonwealth v. Burdell*, 380 Pa. 43, 47, 110 A.2d 193, 195 (1955). See also *Commonwealth v. Peterson*, 453 Pa. 187, 307 A.2d 264 (1973); *Commonwealth v. Boulden*, 179 Pa.Super. 328, 116 A.2d 867 (1955); *See, generally, McCormick on Evidence*, § 190 at 447–454 (2nd Ed. 1972). Special circumstances justifying exceptions to the general rule exist when the evidence of other crimes 'tends to prove (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) to establish the identity of the person charged with the commission of the crime on trial— in other words, where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other.' *Commonwealth v. Peterson*, supra, 453 Pa. at 197– 198, 307 A.2d 269. See also *Commonwealth v. Wable*, 382 Pa. 80, 114 A.2d 334 (1955); *Commonwealth v. Boulden*, supra." See *Commonwealth v. Hude*, 256 Pa.Super. 439, 390 A.2d 183 (1978). Second, even if a particular exception

---

7. *McCormick on Evidence*, § 190 at 447–454 (2nd Ed. 1972) proposes this two step approach to encourage a focus on the purpose of the exclusion.

applies, the trial court must balance the need for the evidence against its potential prejudice in order to determine its admissibility. See also *Commonwealth v. Ulatoski*, 472 Pa. 53, 63, 371 A.2d 186, 191 n. 11 (1977).

In the instant case, we assume that appellant's defense to the crime of receiving stolen property is one of mistake or accident, thereby establishing the relevance of possession of other stolen televisions.[8] Therefore, under the two step approach, we must now determine whether the lower court abused its discretion in admitting the evidence. *Commonwealth v. Bradley, supra*, 243 Pa.Super. at 212, 364 A.2d at 946, outlined the factors that courts must consider in reaching their determination. We held that courts must: "balance, 'on the one side, the actual need for the other-crimes evidence in the light of the issues and the other evidence available to the prosecution, the convincingness of the evidence that the other crimes were committed and that the accused was the actor, and the strength or weakness of the other-crimes evidence in supporting the issue, and on the other, the degree to which the jury will probably be roused by the evidence to overmastering hostility.' " (footnote omitted). See *Commonwealth v. Hude, supra*. This analysis forces courts to focus on the rationale of protecting an accused against unfair prejudice which underlies the "other crimes" rule.

In the instant case, we believe that the balancing approach operates to exclude the challenged evidence. First,

8. Although we assume that evidence of the other stolen televisions is relevant, we cannot condone the Commonwealth's method of proof. When appellant defended on the grounds of mistake or accident, only then should the Commonwealth have attempted to introduce the evidence of other stolen televisions in *rebuttal*. See McCormick, *supra*. Until appellant presented a defense of accident or mistake, the Commonwealth had no need to introduce this evidence. This is especially true here because the other crimes evidence was relevant only to one of the crimes charged, receiving stolen property. Instead, the Commonwealth introduced the other crimes evidence in its case-in-chief in an indiscriminate attack on appellant's character. This approach required some response from appellant and made it impossible for him to present a defense free from the taint of this evidence.

the evidence that appellant committed the other crimes is extremely tenuous; the Commonwealth neither arrested nor convicted appellant of those acts. The Commonwealth produced no evidence showing that King's co-burglar actually gave the television to appellant nor did he testify that if he did give it to appellant, that he also told him it was stolen. Second, the lapse in time between the alleged prior crime and the current charges makes evidence of the former remote and not illustrative of the issue of appellant's guilt. Finally, the Commonwealth had no need to produce this evidence to prove the instant burglary; it had an eye-witness participant in the crimes who testified about appellant's activity. In balancing the unsubstantial Commonwealth interests against appellant's strong interest in not being convicted because he is a "bad person" we find that appellant's interest must prevail.

Further, appellant has an important concern in having the jury concentrate on the instant crime of burglary. Evidence of possession of other stolen televisions distracts the jury from a decision based on the narrow facts presented and improperly permits them to consider remote and extraneous matters. Additionally, the evidence forces appellant to defend against those crimes as well as the one with which he is currently charged. Most importantly, this testimony is exactly the type of "other crimes" that appeals to a jury's emotions and leads to a conviction because of a person's supposedly bad character. Accordingly, we vacate the judgments of sentence and grant appellant a new trial.

PRICE, J., files a dissenting statement.

HESTER, J., files a dissenting statement.

HOFFMAN, J., did not participate in the consideration or decision of this case.

PRICE, Judge, dissenting:

I dissent. I would hold that the evidence was admissible because it tended to prove and bear on the criminal charges pending against the appellant. The probative value of the

proffered evidence outweighs any possible prejudicial effect and is relevant to the issues involved in the pending criminal charges. I would affirm the judgment of sentence.

HESTER, Judge, dissenting.

I dissent. I would affirm the judgment of the court below.