393 A.2d 963

**COMMONWEALTH of Pennsylvania**

v.

**Frank FLOYD, Appellant.**

Superior Court of Pennsylvania.

Submitted June 12, 1978.

Decided Oct. 27, 1978.

554

Edwin P. Smith, Philadelphia, for appellant.

Eric B. Henson, Assistant District Attorney and Edward G. Rendell, District Attorney, Philadelphia, for Commonwealth, appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

HESTER, Judge:

Appellant Frank Floyd was convicted in a non-jury trial of charges of robbery, burglary, simple assault, conspiracy, and possession of instruments of crime. Following the deni-

al of post trial motions, sentence was imposed. On this direct appeal, two issues are raised for our determination:

1) whether certain Commonwealth witnesses should have been permitted to testify after a violation of a sequestration order;

2) whether the Commonwealth knowingly presented a witness who perjured himself.

We find no error and will therefore affirm.

Viewing the testimony in the light most favorable to the verdict winner, the following facts were established. On January 14, 1977 at approximately 7:30 P. M. the victim Clyde Sims was shovelling snow outside his home on East Phillellana Ave. in Philadelphia. He was accosted near his front door by appellant, who made inquiries about buying marijuana. When Sims replied he knew nothing about any marijuana, appellant's co-defendant Fenning suddenly appeared and placed the barrel of a gun against Sims' neck. Sims was forced into his home and the threesome were quickly followed by the other co-defendant, Gibson, and a fourth man, never subsequently identified. The victim's wife and children were also in the house and were ordered to sit down. Sims was led into his bedroom by appellant and Fenning where his hands were bound and his head was gashed from a blow with the butt of a gun. When pressed as to the location of money and jewelry, Sims replied he had money in his coat pocket in the basement.

While the robbery was in progress, Officers Christensen, Bucci, Addlesburger, and Rutter of the Philadelphia Police Dept., were summoned to the scene.[1] As he entered the bedroom, Officer Christensen saw Sims kneeling on the floor, hands tied, head bleeding. Standing nearby were appellant and Fenning, both holding guns. They surrendered without a struggle, as did Gibson, while the fourth man escaped.

Defense evidence rested almost entirely on the testimony of appellant. He testified he went to the Sims' residence

1. It is not clear exactly who or what prompted the police to come to the scene.

that evening, accompanied by Fenning, to purchase marijuana, as Sims had told him a previous occasion to "stop by anytime I want to buy some", N.T. 259. The three met in Sims' living room and had discussed the details of the purchase for only a few minutes when Sims suddenly excused himself. Moments later, Sims shouted, "They're trying to rob me" and police burst into the living room and made the arrests. Appellant insisted at trial there were no guns to be seen that evening; that Sims' head was not bleeding; and that he did not know Gibson or the mysterious fourth man before that night.

■ Appellant's first assignment of error relates to a violation of the court's sequestration order. Prior to trial, the court granted a defense request to sequester all witnesses and explained in open court the meaning of the order. N.T. 20. During a luncheon recess, it appears that Officer Christensen discussed his testimony with the Assistant District Attorney, while Officers Bucci, Addlesburger, and Rutter stood within earshot in the hallway. Appellant's counsel immediately brought this to the court's attention, whereupon a hearing in chambers was convened. Officer Christensen was summoned and testified the only matter he discussed with the Assistant District Attorney was the position of Mr. Sims in the bedroom in relation to the actors when the officer first arrived. The trial court found, as a matter of fact, that a violation of the sequestration order had occurred since three prospective Commonwealth witnesses overheard the conversation. But the court refused appellant's Motion to exclude the testimony of the three witnesses,[2] finding:

> 1) Officer Bucci's proposed testimony would have a basis independent of anything he might have overheard;

**2.** It should be noted that the violation occurred before any of the officers testified. Appellant did not move to exclude the testimony of Officer Christensen, since his discussion of his proposed testimony with the Assistant District Attorney was not itself a violation of the order.

2)　the proposed testimony of Officers Addlesburger and Rutter would not relate in any way to the conversation they overheard.

We agree with the trial court's ruling.

The Supreme Court has recently stated our standard of review in considering violations of sequestration orders.

The selection of a remedy for the violation of a sequestration order is within the sound discretion of the trial court. See *Commonwealth v. Martin,* 440 Pa. 150, 153, 269 A.2d 722, 723 (1970); *Commonwealth v. Turner,* 389 Pa. 239, 264, 133 A.2d 187, 199 (1957). In exercising its discretion, the trial court should consider the seriousness of the violation, its impact on the testimony of the witness, and its probable impact on the outcome of the trial. We will disturb the trial court's exercise of its discretion only if there is no reasonable ground for the action taken.

*Commonwealth v. Smith,* 464 Pa. 314, 320–1, 346 A.2d 757, 760 (1975).

Additionally, we have stated the trial court should consider whether the witness intentionally disobeyed the order so that he might determine what the others will testify to, and whether the party calling the witness procured his disobedience. *Commonwealth v. Smith,* 227 Pa.Super. 355, 372, 324 A.2d 483, 492 (1974). See also, *Commonwealth v. Gibson,* 245 Pa.Super. 103, 369 A.2d 314 (1976).

In applying these standards, we are satisfied the violation had little impact on the outcome of the trial. The only possible prejudice would have come from the testimony of Officer Bucci, for he is the only Commonwealth witness who testified to the same events as Christensen. We note his description of the events in the Sims bedroom covered only four pages of direct examination, (N.T. 216–19), and was primarily directed toward the recovery of one of the weapons. Moreover, he stood very close to Officer Christensen in the bedroom doorway, affording him a vantage point to see clearly the occupants in the bedroom and allowing his testimony to rest independently of the violation of the sequestration order. Of the other two officers who violated the order,

Addlesburger did not testify to any of the events in the bedroom, (N.T. 221–3) and Rutter was never called as a Commonwealth witness. The court also found that the violation was not intentional. In light of the foregoing, we cannot say that the court's refusal to exclude the officers' testimony was an abuse of discretion.

Appellant's only other contention relates to alleged perjured testimony of complainant Sims. The salient facts are these: When asked on cross-examination whether he kept any marijuana in his house, Sims replied, "No". N.T. 73. Similarly, when asked if he had received any inducements or promises of leniency in exchange for his testimony at trial, Sims again said, "No". N.T. 75. Later at trial, it developed that one of the officers recovered a quantity of marijuana, so-called "Thai" sticks, from Sims' basement. N.T. 233–8.[3] It is now appellant's contention that Sims lied when he claimed he had no marijuana in his basement. Further, appellant urges this Court to remand for a hearing on whether drug charges were preferred against Sims, and, if so, whether Sims had been promised leniency in exchange for his testimony at trial.

It is well settled that the demands of due process require the prosecution to make available to the defense any exculpatory evidence, regardless of the good faith or bad faith of the prosecutor. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Commonwealth v. Gee,* 467 Pa. 123, 354 A.2d 875 (1976). This rule encompasses the Commonwealth's duty not to conceal the existence of a promise or of an agreement to recommend a specific sentence or leniency for a crucial prosecution witness. *Commonwealth v. Hallowell,* 477 Pa. 232, 383 A.2d 909 (1978); *Commonwealth v. Kurtz,* 219 Pa.Super. 1, 280 A.2d 410 (1971). This is because such a promise would have a "significant bearing on the witness' motivation for testifying

---

**3.** Although the testifying officer was not permitted to state his opinion that the seized substance was marijuana, the Commonwealth concedes in this Court that that is in fact what it was. Appellee brief at p. 14. fn. 15.

against appellant", *Kurtz, supra,* 219 Pa.Super. at 4, 280 A.2d at 411, and hence " 'such promise or understanding should be fully, fairly and honestly disclosed when it comes into question at trial' ", *Kurtz, supra,* quoting *State v. Taylor,* 49 N.J. 440, 231 A.2d 212 (1967). Such evidence is thus "truly exculpatory", *Gee, supra,* and it is error for the court to restrict cross-examination of a Commonwealth witness when the possibility of such a promise or inducement is raised. *Commonwealth v. Dunn,* 212 Pa.Super. 384, 243 A.2d 476 (1968).

■ We are satisfied the standards of due process have been met in the instant case. The trial court allowed free cross-examination of Mr. Sims on whether any "deal" had been made. Further, the trial Assistant District Attorney categorically denied the existence of any promises or inducements. N.T. 83. In view of such consistent denials, there is nothing in the record to support appellant's allegations that such promises may have been made. This is, thus, not a case where repeated denials of offers of leniency were refuted, as a matter of record, by subsequent events. See, e. g., *Commonwealth v. Hallowell, supra,* (District Attorney's denial of extending leniency to chief Commonwealth witness refuted at the subsequent sentencing hearing for that witness, where it was revealed a bargain had in fact been made for a reduced sentence; new trial awarded); *Commonwealth v. Kurtz, supra* (same). Should appellant or his counsel later discover the existence of any promise of leniency to Mr. Sims, appropriate relief may be sought under the Post Conviction Hearing Act, Act of January 25, 1966, P.L. 1580 (19 P.S. §§ 1180–1 et seq.).

■ We likewise decline to accept appellant's invitation to find Mr. Sims perjured himself in denying he kept any marijuana in his home. That a police search uncovered a quantity of the substance in his basement is not conclusive on the issue of Sims' knowledge of its presence. The record shows all members of Sims' family had access to the basement, as well as appellant's co-defendant Gibson, who was arrested therein. N.T. 245–6. Simply stated, this record

does not permit us to conclude that this complaining witness' testimony was perjured. See *Hallowell,* supra, 383 A.2d at 911.

Judgment of Sentence Affirmed.

HOFFMAN, J., did not participate in the consideration or decision of this case.