435 A.2d 1220

**COMMONWEALTH of Pennsylvania,**

v.

**Allyn D. BOOTH, Appellant.**

Superior Court of Pennsylvania.

Argued June 12, 1980.

Filed June 12, 1981.

Reargument Denied Oct. 27, 1981.

Petition for Allowance of Appeal Denied Jan. 28, 1982.

Peter G. Loftus, Scranton, for appellant.

Sam W. Lewis, Assistant District Attorney, Montrose, for Commonwealth, appellee.

Before HESTER, CAVANAUGH and VAN der VOORT, JJ.

HESTER, Judge:

On April 26, 1977, the Grand Jury of Susquehanna County, Pennsylvania, returned a multi-count indictment against appellant Allyn D. Booth charging him with three counts each of involuntary deviate sexual intercourse, furnishing contraband, and indecent assault and one count each of facilitating escape, obstructing administration of the law, and official oppression. Following a ten-day jury trial in August, 1977, appellant was found guilty only of obstructing administration of the law, furnishing contraband (one count) and facilitating escape.[1] He was acquitted of all other charges. Post-trial motions were argued and denied and in

1. Crimes Code, 18 Pa.C.S.A. §§ 5101, 5123, 5121(b) respectively.

aggregate sentence of two to four years imprisonment was imposed. This appeal followed.

At the time of the alleged offenses, appellant was the Sheriff of Susquehanna County and warden of the county jail. Specifically, the Commonwealth averred that at divers times in January and February of 1977, appellant engaged in various sexual activities with several inmates of the jail; that he had unlawfully furnished alcohol to these individuals and permitted one of them to escape; and that he generally obstructed administration of the law and subjected the victims to official oppression by mistreating them and providing alcohol to them. The evidence supporting those charges of which appellant was ultimately convicted was as follows:

On Friday afternoon, February 4, 1977, Paul Howard Gross, age 20, was brought in custody to the Susquehanna County Jail from the Elmira Correctional Facility in New York where he had been serving a sentence for burglary. Gross was transported from New York by appellant and Police Chief Willard Collier and brought to Susquehanna County to face criminal charges pending in that jurisdiction. Appellant at first placed Gross with the general prison population, but later transferred him to the cell reserved for juvenile prisoners, which is located above the other cell blocks and adjacent to the sheriff's residential quarters. Upon his arrival at the jail, Gross complained that he was not feeling well and that he had a headache. Appellant escorted Gross to the sheriff's living quarters, located within the jail building, and gave Gross a bottle of beer which he consumed in the kitchen. Gross spent that night (Friday, 2/4/77) in the juvenile cell. The next day, appellant gave Gross breakfast in the sheriff's kitchen and left him in the livingroom watching television while he, appellant, tended to some business in town. That afternoon, appellant drove Gross to nearby Hallstead to purchase a watch. Gross was not handcuffed, shackled, or restrained in any way and was left in the car alone while appellant went into several stores. That evening, appellant furnished Gross with scotch, which

he drank in appellant's quarters. Later, Gross was placed back in the juvenile cell but was not locked therein.

The next day, (2/6/77) appellant again provided this inmate with beer and scotch. Gross was permitted to watch television in the sheriff's living room that day and the next day as well. On Tuesday night, 2/8/77, Gross was again not locked in his cell. Desiring to escape, he walked into the sheriff's kitchen and was able to crawl through a window to the outside. He was apprehended a few days later in New York.

We have reviewed the evidence in the light most favorable to the Commonwealth and conclude there was sufficient evidence by which the jury could find all elements of crimes of which appellant was convicted beyond a reasonable doubt. *Commonwealth v. Harper*, 485 Pa. 572, 403 A.2d 536 (1979). Providing Gross with beer and liquor certainly constituted "furnish[ing] to any convict in a prison . . . any kind of spirituous or fermented liquor." 18 Pa.C.S.A. § 5123 (Contraband). Further, by failure to assure that Gross securely confined within his cell and allowing him to roam about the sheriff's living quarters, appellant, being a public servant, "knowingly or recklessly permit[ted] an escape." § 5121(b) (Escape), and failed to maintain requisite control over the prisoner. Toll, Pa.Crimes Code Annotated, p. 605 (1974). See e. g., *Commonwealth v. Shields*, 50 Pa.Super. 194 (1912); *Commonwealth v. Norris*, 87 Pa.Super. 66 (1925) (prosecutions of sheriffs under Act 1860, March 31, P.L. 382, for permitting prisoners to escape). Finally, appellant could properly be convicted of "impair[ing] . . . the administration of law . . . by . . . breach of official duty" on evidence that he provided liquor to Gross and permitted him to escape. § 5101. This section has been interpreted to reach, inter alia, malfeasance of public office. Toll, supra, p. 578.

Appellant contends the court erred in its instructions to the jury concerning the charge of facilitating escape. Under 18 Pa.C.S.A. § 5121, escape or facilitating escape will rise to a third degree felony if any of the three

subsections of § 5121(d)(1) are present.[2] Otherwise, the offense constitutes a misdemeanor of the second degree. The indictment herein averred that appellant was being charged with a felony under this section, but appellant contends the court instructed the jury only as to a misdemeanor. We do not agree. By inclusion of the words "reasonably prudent man" and "reasonably prudent sheriff" in the charge, the court was allowing the jury to find that appellant did not necessarily *intentionally* permit Gross to escape, but that he nonetheless *recklessly* permitted same. § 5121(b). The element of recklessness does not, as appellant urges, reduce the crime to a misdemeanor in all instances, for § 5121(d)(1)(i) provides that the offense will constitute a felony if "the actor [i. e., prisoner] was under arrest for or detained on a charge of felony or following conviction of crime." The evidence established that Gross, the "actor" herein, was serving a sentence on a New York state conviction. Thus, under the facts as presented by the Commonwealth, the jury charge was proper.

■ Appellant next contends that all charges should have been dismissed because of alleged prosecutorial misconduct and improper influence over Commonwealth witnesses by the prosecutor. Before trial, the court granted a defense request to sequester all witnesses. On the morning of the fifth day of trial, the district attorney informed the court in chambers that he may have unintentionally violated the order. On the record, the prosecutor stated that in interviewing a potential Commonwealth witness, one Kathy Sterling, he related to her a small portion of Paul Gross' testimony. Specifically, Miss Sterling was, at the time of the

---

**2.** § 5121(d)(1) provides:
 (1) An offense under this section is a felony of the third degree where:
 (i) the actor was under arrest for or detained on a charge of felony or following conviction of crime:
 (ii) the actor employs force, threat, deadly weapon or other dangerous instrumentality to effect the escape; or
 (iii) a public servant concerned in detention of persons convicted of crime intentionally facilitates or permits an escape from a detention facility.

crimes, a cook at the jail and often delivered food to the prisoners in their cells. While interviewing Miss Sterling, the prosecutor, through an apparent oversight, told her that Gross had already testified that she "unlocked him twice" from his cell and "handed him a meal". Defense counsel's motion for a mistrial, based upon the violation of the sequestration order, was denied. Prior to Miss Sterling's in-court testimony, the court instructed the jury that she had inadvertently become aware of a portion of Gross' testimony and that they should bear this in mind in assessing her credibility. During her testimony, Miss Sterling denied ever handing a meal to Gross except through a latch in his cell door and denied ever unlocking him from his cell.

In *Commonwealth v. Floyd*, 259 Pa.Super. 552, 557, 393 A.2d 963, 966 (1978), we summarized the law governing violations of sequestration orders:

> The selection of a remedy for the violation of a sequestration order is within the sound discretion of the trial court. See *Commonwealth v. Martin*, 440 Pa. 150, 153, 269 A.2d 722, 723 (1970); *Commonwealth v. Turner*, 389 Pa. 239, 264, 133 A.2d 187, 199 (1957). In exercising its discretion, the trial court should consider the seriousness of the violation, its impact on the testimony of the witness, and its probable impact on the outcome of the trial. We will disturb the trial court's exercise of its discretion only if there is no reasonable ground for the action taken. *Commonwealth v. Smith*, 464 Pa. 314, 320–1, 346 A.2d 757, 760 (1975).
>
> Additionally, we have stated the trial court should consider whether the witness intentionally disobeyed the order so that he might determine what the others will testify to, and whether the party calling the witness procured his disobedience. *Commonwealth v. Smith*, 227 Pa.Super. 355, 372, 324 A.2d 483, 492 (1974). See also, *Commonwealth v. Gibson*, 245 Pa.Super. 103, 369 A.2d 314 (1976).

Under these standards, we find no abuse of the court's discretion. The violation was certainly not serious as we do

not find it to be intentional and the statements of Gross of which Miss Sterling was made aware were very minor, considering Gross' lengthy testimony. Further, the woman's testimony was not in accord with those particulars of Gross' statements. Thus, if the violation benefited anyone, it was the defense since two Commonwealth witnesses contradicted each other. We think, considering the minor nature of the violation and its negligible impact on the trial, that the court's instructions were sufficient to cure any taint.

In a related argument, appellant contends that two Commonwealth witnesses, who were former inmates at the Susquehanna County jail, had been influenced by investigating officers. One Russell Dimmick, for example, stated in an *in-camera* hearing that Detective Collier and Trooper John Salinkas threatened him with various prosecutions if he did not give a statement adverse to appellant. Collier and Salinkas stated, however, that there had been no coercion, intimidation, or pressure upon Dimmick and that he had very willingly offered his statement. The trial court, which heard the testimony and could assess credibility, credited the officers' version that there was no coercion. We will not disturb that finding. Further, we note Dimmick was never called as a witness at trial. We can perceive no prejudice to appellant. Similarly, we find no merit in appellant's contention that Commonwealth witness Richard Beck was improperly influenced. Although he was ferried back and forth to court by Chief Collier because he had no other transportation, there was no evidence that Beck was subject to influence or suggestion by Commonwealth officials. Collier flatly denied discussing the case with Beck and appellant had ample opportunity to cross-examine Collier and Beck pertaining to this issue. There was no error.

Next, appellant avers that the court erred in admitting evidence of crimes committed by appellant which were not charged in the indictment. Specifically, appellant was charged with engaging in involuntary deviate sexual intercourse with inmates Gross, David Butts, and John Kressell. The Commonwealth also introduced evidence that appellant

had sex with various other inmates not named in the indictment. The court admitted this testimony, over defense objection, on the theory that the evidence suggested a common plan, scheme, or design. Although the jury eventually acquitted appellant of the sex-related crimes, they may have been nonetheless swayed by this evidence in convicting him of the other charges. We will thus examine appellant's claim.

Our courts have often reiterated the two-step approach in analyzing the admissibility of such evidence:

" 'One of our most fundamental and prized principles in the administration of criminal law is that a distinct crime, except under certain special circumstances, cannot be given in evidence against a defendant who is being tried for another crime. This is because the fact that a person has committed one offense is not proof that he has committed another and because the effect of such testimony upon a jury is nevertheless bound to create prejudice and an emotional reaction on their part against the defendant'. *Commonwealth v. Burdell*, 380 Pa. 43, 47, 110 A.2d 193, 195 (1955). See also *Commonwealth v. Peterson*, 453 Pa. 187, 307 A.2d 264 (1973); *Commonwealth v. Boulden*, 179 Pa.Super. 328, 116 A.2d 867 (1955); See, generally, McCormick on Evidence, § 190 at 447–454 (2nd Ed.1972). Special circumstances justifying exceptions to the general rule exist when the evidence of other crimes 'tends to prove (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) to establish the identity of the person charged with the commission of the crime on trial—in other words, where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other.' *Commonwealth v. Peterson*, supra, 453 Pa. at 197–198, 307 A.2d 269. See also *Commonwealth v. Wable*, 382 Pa. 80, 114 A.2d 334 (1955); *Commonwealth v. Boulden*, supra." See *Common-*

*wealth v. Hude,* 256 Pa.Super. 439, 390 A.2d 183 (1978). Second, even if a particular exception applies, the trial court must balance the need for the evidence against its potential prejudice in order to determine its admissibility. See also *Commonwealth v. Ulatoski,* 472 Pa. 53, 63 n.11, 371 A.2d 186, 191 n. 11 (1977).

*Commonwealth v. Wright,* 259 Pa.Super. 293, 298–299, 393 A.2d 833, 835–6 (1978). Thus, with reference to the fourth exception listed above, our courts have admitted evidence of another crime not charged where there is a "logical connection" between the two and where there is a "high correlation in the details of the crimes." *Commonwealth v. Bastone,* 262 Pa.Super. 590, 396 A.2d 1327 (1979). "[S]omething more [is required] than the commission of the same class of crime, such as theft, namely something unusual or distinctive as to be like a signature." *Commonwealth v. Patterson,* 484 Pa. 374 n.6, 399 A.2d 123 n. 6 (1979), citing *Commonwealth v. Fortune,* 464 Pa. 367, 346 A.2d 783 (1975). See, e. g., *Commonwealth v. Gilmore,* 447 Pa. 21, 288 A.2d 757 (1972) and *Commonwealth v. Smith,* 443 Pa. 151, 277 A.2d 807 (1971) (in robbery prosecution, evidence of other robberies committed by defendant admissible where circumstances of the two crimes were very similar): *Commonwealth v. Kjersgaard,* 276 Pa.Super. 368, 419 A.2d 502 (1980) (evidence of prior rape in rape prosecution held admissible where there were many similarities between the two). Where, however, the "other crimes" evidence contains many dissimilarities from the crime charged and embrace no distinctive elements which would suggest a common design, we will find error in the admission thereof. See, e. g., *Commonwealth v. Patterson,* 484 Pa. 374, 399 A.2d 123 (1979) (in rape prosecution, admission of prior rape by defendant, held, error where dissimilarities between the two crimes included the weapon used, locales, disguise of assailant, use of violence); *Commonwealth v. Hude,* 256 Pa.Super. 439, 390 A.2d 183 (1978) (no distinctive similarity between a past drug sale and the sale charged instantly); cf. *Commonwealth v. Fortune,* 464 Pa. 367, 346 A.2d 783 (1975); *Commonwealth v. Foose,* 441

Pa. 173, 272 A.2d 452 (1971); *Commonwealth v. Peterson,* 453 Pa. 187, 307 A.2d 264 (1973) (dissimilar robberies). Further, we have held, at least with respect to sex offenses, that use of "other crimes" to prove design is to be limited to acts committed no more than one year prior to the offense actually charged. *Commonwealth v. Bradley,* 243 Pa.Super. 208, 364 A.2d 944 (1976); cf. *Commonwealth v. Shively,* 492 Pa. 411, 424 A.2d 1257 (1981).

 Under these standards, we are satisfied that the evidence of "other crimes" was properly admitted instantly. All of the acts alleged were of similar character: an inmate in the Susquehanna County jail is invited by appellant to the sheriff's quarters and offered beer and alcohol; afterwards, appellant makes sexual advances to the inmate either in the cell or in the private rooms; the sexual activity is always of the same variety. The pattern repeated in each of the encounters related by the various inmates who testified carried a mark of distinction absent from other sex-related crimes. Further, the court gave instructions to the jury cautioning them that such evidence was admissible solely for the purpose of showing mental plan or pattern. Charge, pp. 31–33. Nor do we think the prejudice outweighed the probative value of the evidence. Perhaps the best indication that the jury was not inflamed by the "other crimes" testimony is that they acquitted appellant of all sex offenses. Moreover, none of the acts averred were too remote under *Bradley,* supra. The high degree of similarities among the acts alleged persuade us that a common plan or design was established.

 Appellant next contends that all charges should have been dismissed because of irregularities in the pre-trial and grand jury procedures. The criminal complaint filed on 2/17/77 charged three counts of indecent assault, 18 Pa.C. S.A. § 3126(5), but on the magistrate's transcript it appears that indecent *exposure* was erroneously typed in as the charge for which appellant was held for court. The word "exposure" is crossed out and "assault" added thereon. We view this as no more than a clerical error. The correct

section under the Crimes Code for indecent assault was set forth in the complaint and on the transcript and the acts alleged were described in the complaint in words directly incorporating the language of § 3126(5). Further, the issue would seem to be moot since appellant was acquitted on all counts of indecent assault. Similarly, appellant's averment that the crime of attempt (§ 901) was erroneously added to the contraband charge as to John Kressell is moot since he was acquitted of that charge as well. Appellant contends that a defect on the grand jury's indictment warrants dismissal of all charges. Pa.R.Crim.P. 210(a) provides: "After a grand jury has considered the bill of indictment, the foreman shall endorse thereon their action, either "approved" or "dismissed," and he shall sign it and record thereon the date of the grant jury's action." The Grand Jury instantly returned the 12-count indictment against appellant on April 26, 1977. Yet, on several counts, it appears that the date of grand jury action was erroneously written as April 25, 1977 and then corrected to April 26. Both sides offer a variety of possible explanations for this discrepancy, none of which appear of record. In any event, appellant has failed to establish any actual prejudice as a result of this irregularity. In the past, our courts have refused to find reversible error where minor violations of the Grand Jury rules fail to result in prejudice to the defendant. *Commonwealth v. Noyer*, 265 Pa.Super. 544, 402 A.2d 679 (technical violation of Rule 210; no prejudice); *Commonwealth v. Levinson*, 239 Pa.Super. 387, 362 A.2d 1080 (1976), aff'd., 480 Pa. 273, 389 A.2d 1062 (1978), (minor violation of Rule 209; no prejudice). We likewise find no error meriting reversal. Further, we find the dates set forth in the counts on which appellant was convicted to be set forth with sufficient specificity. See, Rule 213(a)(3) ("if the precise date is unknown ... an allegation that it was committed on or about any date ... shall be sufficient").

Appellant complains that the district attorney did not file an adequate bill of particulars. However, we find the place and dates of the various crimes were set forth

satisfactorily. Appellant was not entitled to the disclosure of witnesses' statements before trial under Rule 310, then in force. *Commonwealth v. Johnson*, 457 Pa. 554, 327 A.2d 632 (1974).

Finally, appellant contends that the concurrent sentences of two to four years imprisonment were unduly harsh and excessive and that the pre-sentence report was inaccurate. During the sentencing hearing, counsel pointed out several portions of the pre-sentence which were either false, misleading or hearsay. The court forthwith acknowledged the instances of hearsay and stated it would not consider those portions of the report objected to by counsel. The court further was provided with a wealth of information by which it could determine the character of appellant and the individual circumstances of the offense. *Commonwealth v. Martin*, 466 Pa. 118, 351 A.2d 650 (1976); *Commonwealth v. Pauze*, 265 Pa.Super. 155, 401 A.2d 848 (1979). During the trial, numerous character witnesses attested to appellant's good reputation and the pre-sentence report reviewed his employment record with the air force and with private industry. The report then elaborated on appellant's public service career as a police officer, police chief, deputy game commissioner, and finally sheriff, adding that his former employers heaped "great praise" upon him. The circumstances of the offenses were related in detail during the trial and reviewed by the court on the record during the sentencing proceeding. The court then proceeded to evaluate these factors in light of the legislative guidelines for sentencing, 18 Pa.C.S.A. § 1321 *et seq.; Commonwealth v. Doyle*, 275 Pa.Super. 373, 418 A.2d 1336 (1979); *Commonwealth v. Wicks*, 265 Pa.Super. 305, 401 A.2d 1223 (1979). The court noted the severity of the crimes, that appellant violated a public trust, that his actions breeded further disrespect for the law among those already incarcerated, and that he was in need of rehabilitation. Sec. 1325. Hearing of 4/5/78, pp. 11–14. The sentence was well within the statutory limits and we simply cannot find on this record that there was an abuse of discretion. *Commonwealth v. Valentin*, 259 Pa.Su-

per. 496, 393 A.2d 935 (1978). We thus find the court fully complied with *Commonwealth v. Riggins*, 474 Pa. 115, 377 A.2d 140 (1977) and related cases in imposing this sentence.

Judgment of sentence affirmed.

CAVANAUGH, J., files a concurring opinion.

CAVANAUGH, Judge, concurring:

While I concur in the result reached by the Majority, because the issue of the admissibility of evidence offered to show a common plan, scheme or design has been waived, I would decline to reach the merits.

Prior to the taking of testimony trial counsel objected to the presentation of evidence by the Commonwealth to show common plan, scheme, or design. This objection was overruled without prejudice to appellant to make specific objections when such evidence is presented. At trial testimony was heard without objection[1] from four witnesses, other than the complaining witnesses, concerning offenses committed by the appellant for which he had not been charged. Because trial counsel failed to make specific objections to the testimony at trial, appellant is foreclosed from raising this issue on appeal. *See Commonwealth v. Griffin*, 271 Pa.Super. 228, 412 A.2d 897 (1979); *Commonwealth v. Hughes*, 268 Pa.Super. 536, 408 A.2d 1132 (1979). Although the issue of waiver has not been addressed by either party, this court may reach the issue *sua sponte. Commonwealth v. Triplett*, 476 Pa. 83, 381 A.2d 877 (1977); *Commonwealth v. Tunnel*, 463 Pa. 462, 345 A.2d 611 (1975).

Appellant's waiver of the issue notwithstanding, I am compelled to comment on what I deem to be erroneous in the Majority's disposition on the merits.

---

[1] Although the Majority states that such evidence was admitted over objection, no objection was made. Trial counsel did object during the direct examination of a complaining witness, Butts, to questions concerning crimes prior to the dates alleged on the indictment. However, such evidence involving a victim of sexual offenses is governed by a more liberal standard. *Commonwealth v. Leppard*, 271 Pa.Super. 317, 413 A.2d 424 (1979).

The rule of evidence that a distinct crime, except under certain special circumstances, cannot be received in evidence against a defendant being tried for a different crime has been referred to us "one of our most fundamental and prized principles in the administration of criminal law." *Commonwealth v. Wright*, 259 Pa.Super. 293, 298, 393 A.2d 833, 835–36 (1978) *quoting Commonwealth v. Burdell*, 380 Pa. 43, 47, 110 A.2d 193, 195 (1955). *See* also *Commonwealth v. Boulden*, 179 Pa.Super. 328, 116 A.2d 867 (1955). The reasons for this rule are two-fold: The fact that a defendant has committed one criminal act is not proof that he committed another. Secondly, because the risk of jury prejudice is so great, the defendant may be convicted of being a "bad person", rather than of the specific crime charged. *Id. See generally*, McCormick on Evidence, § 190 at 447–54 (2d ed. 1972).

Because of the potential lack of probative value and the risk of prejudice, evidence of unrelated criminal acts are not admissible unless such evidence fits within certain special circumstances exceptions. Thus evidence of other crimes may be admissible when it is offered to prove motive, intent, absence of mistake or accident, identity of the accused, or common plan, scheme or design of two or more crimes which are so related that proof of one tends to prove the other. *Commonwealth v. Wright*, supra, *Commonwealth v. Showalter*, 231 Pa.Super. 278, 332 A.2d 456 (1974). However, even if the evidence comes within one of the special circumstances exceptions, in determining its admissibility the trial court must balance the need for the evidence against its potential prejudice. *Commonwealth v. Wright, supra.*

In the instant case the Commonwealth offered the testimony of four witnesses who had been incarcerated in the Susquehanna County jail at or about the time that the acts with which the appellant was charged were committed. These witnesses, McKinney, Cronk, Razderk, and Koshinski, testified concerning criminal acts allegedly performed by the appellant. The lower court admitted this testimony as evidence of a common plan, scheme or design. In reference to

the admission of this testimony into evidence, the Majority states:

> ... [W]e are satisfied that the evidence of "other crimes" was properly admitted instantly. All of the acts alleged were of similar character: An inmate in the Susquehanna County jail is invited to the sheriff's quarters and offered beer and alcohol; afterwards, appellant makes sexual advances to the inmate either in the cell or in the private rooms; the sexual activity is always of the same variety. The pattern repeated in each of the encounters related by the various inmates who testified carried a mark of distinction absent from other sex-related crimes... The high degree of similarities among the acts alleged persuade us that a common plan or design was established.

A review of the record, however, reveals that the acts testified to were not of the similar character described by the Majority. McKinney testified that on four occasions he was invited into the appellant's quarters where acts of oral sodomy were performed. On three of these occasions McKinney, appellant and Butts were present. The fourth incident included only McKinney and the appellant. McKinney denied ever being served alcohol by the appellant. Cronk testified that while in the appellant's quarters the appellant asked him to take a shower with him but Cronk declined. No sodomy occurred nor was any alcohol served. Razderk testified to drinking beer and scotch in the appellant's quarters but he did not testify that any sexual acts were committed. Finally, Koshinski testified to being furnished alcohol by the appellant, but not to the occurrence of any sexual acts.

Thus while the evidence may show a propensity in the appellant for homosexual activity, the record in the instant case clearly shows that no common plan was established. As the Majority states, where the "other crimes" evidence contains many dissimilarities from the crime charged and contains no distinctive elements, it is error to admit such testimony. In sum, the evidence here showed nothing more than reckless opportunism in the exercise of appellant's

proclivities rather than the sinister methodology signifying common plan, scheme or design.

Moreover, the mere existence of a "high degree of similarities among the acts alleged" is not sufficient to bring such evidence within the common plan, scheme, or design exception. As noted above, to be admissible the crimes alleged must be *so related that proof of one tends to prove the other.* Thus McCormick limits the admissibility of common plan, scheme, or design evidence to situations where the prosecution uses the evidence to shed light on the disputed issues of the defendant's motive, identity, or intention. *McCormick*, supra at 448–49. This proposition was cited with approval in *Commonwealth v. Bradley*, 243 Pa.Super. 208, 214 n.2, 354 A.2d 944, 947 n.2 and is consistent with the principle that testimony of other alleged crimes may not be offered to demonstrate criminal propensity. *See also Commonwealth v. Boulden, supra.* In *Commonwealth v. Leppard*, 271 Pa.Super. 317, 413 A.2d 424 (1979) Judge Spaeth in a concurring opinion addressed the problem of common plan evidence in prosecution for sexual offenses and the application of the *Bradley* and *Boulden* decisions to such situations:

Those decisions adhere to the principle that in a prosecution for a sexual offense the Commonwealth may not introduce evidence that the defendant committed prior or subsequent offenses against third persons similar to the offense committed against the complaining witness, if its only purpose is to show that the defendant is generally lustful or sexually depraved. It is hornbook law that evidence of prior criminal acts is admissible if "[t]o show a passion or propensity for illicit sexual relations with the particular person concerned in the crime on trial," McCormick on Evidence § 190 at 449 (Clearly ed. 1972) (footnote omitted); it is also hornbook law that evidence of "[o]ther like sexual crimes with other persons do[es] not qualify for this purpose." *Id.* (footnote omitted). *See also Wigmore, supra* § 402(c) ("The defendant's former *rape* or attempt of rape of a *third person* cannot be treated as indicating a

passion or desire for the woman in issue. . . ." (original emphasis).

271 Pa.Super. at 319, 413 A.2d at 425.

In the instant case the appellant did not attempt to establish that he lacked motive, or that he committed the crimes accidentally or that the complaining witnesses were mistaken as to the identity of the perpetrator. Therefore, in allowing the evidence of common plan under its mistaken view of the facts, the Majority thereby sanctions the admission of testimony establishing that the defendant committed the acts charged in the past as proof that he will, and in fact did, commit those acts again. Evidence admitted for this purpose is irrelevant and prejudicial.

Further, the Majority seems to rely on *Bradley* for the proposition that sex offenses [2] committed less than one year are not too remote so as to render them inadmissible. However, *Bradley* should not be given such an expansive reading and the language must be viewed within the proper context. In *Bradley* this court approved the holding in *Boulden* which sought to limit the prior decision in *Commonwealth v. Kline*, 361 Pa. 434, 65 A.2d 348 (1949). We stated:

> The trial court and the Commonwealth rely heavily on *Commonwealth v. Kline*, 361 Pa. 434, 65 A.2d 348 (1949), as support for an expanded and loose definition of "plan or design." In *Kline*, the Pennsylvania Supreme Court stated that, "The word 'design' implies a plan formed in the mind. That an individual who commits or attempts to commit abnormal sex offences is likely to have such a mental 'plan' finds recognition in the fact that when a

---

**2.** Formerly it was held that courts may be more liberal in allowing evidence of prior crimes to show common plan, scheme or design where the crimes were involved are sex offenses. *Commonwealth v. Kline*, 361 Pa. 434, 65 A.2d 348 (1974). However, in *Commonwealth v. Shively*, 492 Pa. 411, 417, 424 A.2d 1257, 1259–60 (1981) (per O'Brien, C. J. with one Justice concurring and two Justice concurring in the result), *Kline* was expressly overruled. Cases of this court have also seriously questioned the holding of *Kline* and have urged that sexual and nonsexual crimes must be treated alike in deciding whether evidence of prior criminal activity should be admitted. *See Commonwealth v. Bradley*, supra; *Commonwealth v. Boulden*, supra.

defendant is charged with the commission of a sexual offence the law is more liberal in admitting as proof of his guilt evidence of similar sexual offences committed by him than it is in admitting evidence of similar offences when a defendant is charged with the commission of non-sexual crimes. . . . [I]f A is being tried for the rape or attempted rape of Y the fact that *recently* he raped or attempted to rape X is admissible in evidence because it tends to prove that he possessed such an abnormal mental or moral nature as would likely lead him to commit the offence charged." 361 Pa. at 443–444, 65 A.2d 351 (1949). (emphasis supplied). In *Kline*, however, the defendant was charged with a rape occurring on October 20, 1946, and another witness testified that defendant exposed himself to her sometime late in October. "There was thus a close relationship in time, with the probability that the events occurred within a week of each other and the possibility that they occurred the same day." *Commonwealth v. Boulden*, supra, 179 Pa.Super. at 347, 116 A.2d at 876. We agree with Judge Woodside's opinion in *Boulden* that the rule of the *Kline* case should not be extended beyond its facts to permit evidence of events occurring more than one year prior to the offense charged.

243 Pa.Super. at 214, 364 A.2d at 947. This language does not establish a general rule as the Majority seems to conclude, but rather is merely noting its approval of the holding in *Boulden* in light of its own particular facts. (There in a prosecution for corrupting the morals of two girls it was held that admission of testimony that defendant, a year prior to offenses for which he was being tried, had committed a similar act with another girl and had shown a pornographic picture to yet another girl was error.) Also in *Bradley* we stated that the court should be more willing to construe reasonable time litigations even more strictly when the prosecution seeks to offer in its case in chief evidence of other offenses not documented by recorded convictions or even resulting in arrest or trial. 243 Pa.Super. at 216 n. 5, 364 A.2d at 948 n. 5.

In conclusion, I note that my disagreement with the majority is threefold. First, the issue was waived by trial counsel's failure to object. Second, the testimony adduced fell far short of establishing a common plan. Finally, assuming arguendo that a common plan was shown, such evidence was not admissible because it did not tend to prove the crimes charged.

In *Commonwealth v. Boulden* Judge Woodside set forth three dangers which accompany the admission of evidence of other crimes: (1) A defendant would have to meet charges of which he had no notice and which might be totally fabricated; (2) the defendant would have to respond to collateral issues and the attention of the jury would be diverted from the crime being charged; (3) the jury might conclude that proof of prior offenses justified a condemnation of the defendant irrespective of his guilt of the crimes charged. Because each of these dangers are overwhelmingly present in the instant case and because the common plan, scheme or design exception has been extended far beyond its permissible scope, I strongly disagree with the majority. By allowing the testimony of McKinney, Cronk, Razderk, and Koshinski the majority extends the common plan, scheme or design exception to such an impermissible degree as to deny the defendant a fair trial.